UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. Cr. No. 06-070-01S

OSCAR SANDOVAL

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

The Defendant Oscar Sandoval has moved to suppress the cocaine seized by TFA Jacobson and SA Forde on May 25, 2006 from a Sentry safe located in the trunk of a black Toyota Avalon, RI registration number OC-177, as well as the oral and written statements allegedly made by the Defendant to those officers. An evidentiary hearing was held before this Honorable Court on September 7, 2006, at which Special Agent Daniel Forde of the DEA was the sole witness. At the conclusion of Agent Forde's testimony, and after both the Government and Defendants had rested, the Court requested supplemental memoranda addressing the following issues.

**A. Whether this Defendant had authority to consent to the search of the Toyota at the scene of the stop.**

Special Agent Forde testified that, when he and Agent Jacobson stopped the Toyota at approximately 1:40 a.m. on May 25, 2006, its sole occupant was the operator, who was the codefendant Manuel Mendes Herasme. He further testified that, at the time of the stop, when asked by Agent Jacobson whether he minded if agents searched the Toyota, the codefendant responded that the Toyota was "not his". Prior to the stop, SA Forde had ascertained that the Toyota was registered to a person named "Eva Lopez".

He further testified that the pickup truck operated by this Defendant was also stopped. After the stop, He testified that he approached the pickup truck as Agent

Jacobson remained with the codefendant, that he recognized this Defendant as Oscar Sandoval as soon as he saw his face from the photograph he had been provided; that the Defendant gave the name "Eddie Ramos", which SA Forde knew to be false; and that he then handcuffed Defendant. He further testified that Defendant said his girlfriend owned the Toyota. SA Forde testified that he then brought this Defendant from the pickup truck to the Toyota where Agent Jacobson and the codefendant were located, and that Agent Jacobson asked Defendant for permission to search the Toyota. When Defendant responded in the affirmative, Agent Jacobson opened the trunk of the Toyota with a key obtained from the codefendant.

Defendant submits that a search without a warrant is presumptively unreasonable, United States v. Romain, 393 F.3d 63 1st Cir. 2004), and that the Government must demonstrate that consent to such a search is knowing, intelligent and voluntary, United States v. Marshall, 348 F.3d 2811 (1st Cir. 2003), and is made by someone with actual or apparent authority to consent to the search of the vehicle. Illinois v. Rodriguez, 497 US 177 (1970). Defendant submits that, absent Miranda warnings, any consent obtained from him to a search of the Toyota at the scene of the stop was neither knowing, intelligent nor voluntary. He further submits that he lacked actual or apparent authority to give permission to the agents to search his girlfriend's car. He was not the owner of the car, nor was he operating the Toyota when it was stopped. In fact he was not even an occupant of the Toyota, but at all relevant times on the evening of May 24-25, 2006 Defendant was observed operating a blue pickup truck. In United States v. Jimenez, (1st Cir. 8/17/05), the First Circuit Court of Appeals has addressed the concept of third party consent to search as follows: "[t]he authority which justifies third-party consent to search

rests upon mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched". The Court continued that the area searched in that case was not a "common area", and that the person giving the alleged third-party consent in that case did not have a key to enter the room and in fact obtained access to the room by prying the door open with a butter knife. The appellate court reversed the trial court's decision upholding third party consent to the search of the room, and held that the evidence found therein should have been suppressed.

Defendant submits that the instant case bears remarkable factual similarities to the facts presented in Jimenez. The codefendant, although he advised that the Toyota was "not his", was in sole possession of the Toyota and was the only person with keys to that vehicle. Although he advised that the vehicle belonged to his girlfriend, the Defendant had no indicia of ownership or control; in particular, he was not observed either earlier in the evening or at the time of the stop driving the Toyota or as a passenger therein. Even more importantly, as in Jimenez, the Defendant did not have keys to the Toyota and could not provide the agents with the ability to gain entry to the trunk. While entry was gained in Jimenez by utilizing a butter knife to pry open a door, in the instant case entry to the Toyota's trunk was gained by utilizing keys seized from the codefendant, who had previously spurned the agents' request for consent to search. Defendant submits that, on these facts, the Government has failed to demonstrate that Defendant had the capacity to give third-party consent to the search of the Toyota's trunk.

B. **Whether, assuming that the agents had reasonable suspicion for the stop but lacked probable cause, and further assuming that the Defendant gave valid third party consent to the search of the trunk of the Toyota, the presence of a safe in the trunk converts the agents' reasonable suspicion into probable cause to arrest.**

According to SA Forde's testimony, he handcuffed this Defendant once he had observed that Defendant's facial features matched those depicted in the photograph of Oscar Sandoval and Defendant identified himself as "Eddie Ramos". Based on this testimony, Defendant submits that he was already under arrest when he was escorted by SA Forde from outside the pickup truck to the area outside the Toyota. Accordingly, Defendant submits that Miranda warnings should have preceded Agent Jacobson's request for permission to search the Toyota, and that the failure to give Miranda warnings at the scene renders the safe and its contents inadmissible.

SA Forde's testimony that drug traffickers have been known to use safes to store drugs and money is the only basis in the testimony for concluding that the presence of the safe is sufficient to convert reasonable suspicion into probable cause. There was no testimony regarding any odor of narcotics, nor was a "drug canine" summoned to the scene of the stop to confirm or alleviate the agents' suspicions regarding the safe's contents. Defendant submits that this testimony, standing alone, is insufficient.

C. **Was the Defendant capable of providing third party consent to open and search the safe.**

Defendant submits that he lacked capacity to provide valid third-party consent to the agents to open and search the safe found inside the trunk of the Toyota. SA Forde testified, and his notes memorialize, that Defendant told SA Forde, at the Pawtucket Police Station, that the Toyota was his but the safe was not his, thus he could give permission to search the Toyota, but not to search the safe. Although Defendant

possessed a key to the safe at the time of his arrest, this key was not sufficient to provide access to the interior of the safe. According to SA Forde, a multi-digit combination was also required to open the safe, and this Defendant was unable to provide agents with the combination, directing agents to his codefendant for this information. For this reason, SA Forde testified that despite Defendant's "consent" to open the safe, agents pried the safe open to gain entry.

In addition to the decision of the First Circuit Court of Appeals in Jimenez, discussed in detail in the first section of this memorandum, other case law points inexorably to the conclusion that Defendant lacked actual or apparent authority to give third party consent to open the safe. In United States v. Botchway, 433 F.Supp.2d 133 (D. Mass. 2006), Judge Saylor recently held that consent, after a traffic stop, by a passenger who admitted that his girlfriend owned the motor vehicle, to the search of a locked briefcase located in the vehicle's trunk and containing documents belonging to another passenger, was invalid. The Court found that the passenger, who had borrowed his girlfriend's vehicle for a trip, could give valid third-party consent to a search of the vehicle; however, the Court further found that actual or apparent authority to consent to a search of the locked briefcase had not been demonstrated, and so that the contents of the briefcase must be suppressed.

The Court in Botchway noted that consent to search property does not automatically include consent to search closed containers found inside that property, citing United States v. Infante-Ruiz, 13 F.3d 498 (1st Cir. 1994). Accordingly, the Court reasoned that law enforcement officers cannot assume that every container located in a motor vehicle is under the shared authority of the owner, operator and passengers. The

Court found that the Government had established no basis for concluding that the briefcase belonged, in whole or in part, to the person giving consent, and suppressed both the contents of the briefcase and statements given by defendants thereafter.

Other cases, cited in Botchway, have reached the same result on similar facts. The Ninth Circuit Court of Appeals has held that "[a] person has an expectation of privacy in his or her private, closed containers" and "does not forfeit that expectation of privacy merely because the container is located in a place that is not controlled exclusively by the container's owner." United States v. Davis, F.3d (9th Cir. 2003), quoting United Staes v. Fultz, 146 F.3d 1102, 1105 (9th Cir. 1998). See also United States v. Block, 590 F.2d 535 (4th Cir. 1978) (mother who had access to her son's room but did not have a key to her son's locked footlocker in that room could consent to a search of the room, but not the footlocker). In Fultz, the Court held that a defendant had a reasonable expectation of privacy in cardboard boxes that he had stored in another's garage. In Davis, the Court concluded that defendant had a reasonable expectation of privacy in a gym bag stored under a bed. In neither case did the Court find that a third party had actual or apparent authority to consent to a search, and suppressed the fruits thereof. Similarly, in United States v. Welch, 4 F.3d 761 (9th Cir. 1993), the Ninth Circuit held that a third party cannot give valid consent to search someone else's purse even if the purse is located in a car over which both persons have control.

In the instant case, as the foregoing cases indicate, Defendant's actual authority to consent to a search of the safe cannot be inferred from his acknowledged authority over the Toyota belonging to his girlfriend. Defendant submits that in fact, the testimony of SA Forde at the suppression hearing indicates that only the codefendant, who had

invoked his right to counsel and declined to speak with the officers, possessed the combination to the safe. Defendant submits that the Government is equally unable to justify the search by proving that Defendant had apparent authority to consent, i.e., that the agents reasonably believed that the Defendant had actual authority to grant consent.

In the instant case, Defendant submits that the agents cannot have reasonably believed this Defendant had actual authority to consent to a search of the safe, in view of the fact that Defendant was unable to provide the agents with the combination required to obtain access. Once the agents determined that only the codefendant had the combination, Defendant submits that the agents were on notice that Defendant and the codefendant did not have "mutual use of the container and joint access or control thereto," as described in the cases cited herein, and that the Defendant therefore did not have apparent authority to consent to a search of the safe. For this reason, Defendant submits that the contents of the safe, as well as all statements made by Defendant, must be suppressed.

In Botchway, Judge Saylor concluded his lengthy and thoughtful opinion with the following paragraph, which Defendant submits is equally apposite in the instant case:

> The Court takes no pleasure in granting a motion to suppress, which in all likelihood will lead to the dismissal of the criminal charges for lack of evidence. The Court is also cognizant of the fact that law enforcement officers in the field are often required to make quick decisions that are all too easy to second guess from the comfort of judicial chambers. Nonetheless, when an officer has crossed the boundary between a reasonable and an unreasonable search, the Court must adhere to the requirements of the law.

Defendant submits that the boundary has also been crossed in the instant case, and urges

this Court to act accordingly.

OSCAR SANDOVAL
Defendant
By His Attorney,

/s/ Judith Crowell, Esq.
128 Dorrance Street
Fourth Floor
Providence, RI 02903
(401) 272-6600

**CERTIFICATION**

I hereby certify that on September 11, 2006, a copy of this Memorandum was e-filed and served via e-file on AUSA Sandra Beckner, 50 Kennedy Plaza, Eighth Floor, Providence, RI 02903 and on Edward C. Roy, Assistant Federal Defender, 10 Weybosset Street, Providence, RI 02903.

/s/Judith Crowell, Esq.