**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | |
| | ) | **Cr. No. 06-070S** |
| **OSCAR R. SANDOVAL-ESPANA a/k/a** | ) | |
| **Eddie Alberto Ramos** | ) | |
| **and** | ) | |
| **MANUEL A. MENDEZ-HERASME** | ) | |

# GOVERNMENT'S TRIAL MEMORANDUM

## I. The Indictment and Elements

The indictment charges OSCAR R. SANDOVAL-ESPANA and MANUEL A. MENDEZ-HERASME with possession with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. Based upon defense counsel's representation, MENDEZ is expected to plead guilty.

The elements of Count I are as follows:

First, that defendant on or about May 25, 2006 possessed cocaine, either actually or constructively;

Second, that he did so with a specific intent to distribute the cocaine over which he had actual or constructive possession; and

Third, that he did so knowingly and intentionally.

If the jury finds the government proved each of the above elements beyond a reasonable doubt, then the jury must answer the

following question:

Did the offense involve five kilograms or more of cocaine?

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.21.841(a)(1), Comment Note 2.

To establish aiding and abetting, the government must prove beyond a reasonable doubt:

First, that someone else committed the charged crime; and

Second, that defendant consciously shared the other person's knowledge of the underlying criminal act, intended to help him, and willfully took part in the endeavor, seeking to make it succeed.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.18.02.

## II. Factual Summary

The government expects the evidence in this case to show the following:

On May 24, 2006, in response to information received[1],

[1] SA Forde received information from a confidential source (CS) that Oscar R. Sandoval-Espana (SANDOVAL) was a cocaine trafficker in possession of approximately five kilograms of cocaine stored in the detached garage behind his residence located at 95 Mulberry Street, Pawtucket, RI. According to the CS, the co-defendant, Manuel A. Mendez-Herasme (MENDEZ), lived with the defendant at 95 Mulberry Street. The CS described one of the vehicles used by the defendants to transport cocaine as a black Toyota sedan, with a Rhode Island registration of OC-177 and a hidden compartment for transporting narcotics.

Special Agent (SA) Dan Forde and Task Force Agent (TFA) Karl Jacobson, with the Drug Enforcement Administration (DEA) Task Force, set up surveillance of 95 Mulberry Street, Pawtucket, RI, a residence occupied by SANDOVAL and MENDEZ. While attempting to collect the defendants' trash, a pickup truck pulled into the driveway.

Agents left believing the targets had just observed their presence, and returned approximately two hours later at 1:35 a.m. on May 25, 2006. When the agents returned, they found the pickup in the rear of the property near the detached garage. The pickup then drove from behind the residence, and backed up to the front door of 95 Mulberry Street. The driver exited the vehicle, walked inside, came back outside, walked towards the pickup and out of view.

Then, a black Toyota sedan, with the plate matching that given by the CS, pulled out of the driveway. The agents followed the Toyota sedan. Shortly thereafter, agents realized the pickup truck, which had caught them collecting trash earlier in the evening, was following them. The agents stopped the Toyota sedan, and gestured for the pickup to pull over as well.

As they approached the Toyota, agents saw that the driver was visibly shaking. TFA Jacobson asked the driver if he knew the individual in the pickup, and the driver said he did not know the pickup or its driver. TFA Jacobson asked the driver of the

Toyota for identification, and learned that the driver was MENDEZ. Despite MENDEZ's statement that he did not know the individual in the pickup or the pickup itself, TFA Jacobson ran the plates and learned that the pickup was registered to MENDEZ.

When he approached the pickup, SA Forde recognized SANDOVAL from the photograph provided by the CS. SA Forde noticed that SANDOVAL appeared to be nervous. Then, when asked for identification, SANDOVAL gave false identification to SA Forde that was in the name of "Eddie Ramos." SANDOVAL also told SA Forde that he did not know the driver of the Toyota.

At this time, approximately 10 minutes into the traffic stop, SANDOVAL told SA Forde that the Toyota belonged to his girlfriend, but that he uses it. SANDOVAL then gave SA Forde consent to search the Toyota.

TFA Jacobson opened the trunk and saw a safe, an item commonly used in the narcotics business for storing drugs, money and firearms. At that time, the agents transported SANDOVAL and MENDEZ to the Pawtucket Police Station for further investigation.

After being read his Miranda rights, at approximately 2:40 a.m., SANDOVAL again told the agents the Toyota was his girlfriend's, and the safe was MENDEZ's, but that he had given MENDEZ permission to drive the safe to Prospect Heights, a known drug trafficking area. Then, he admitted that he had provided false identification on the scene.

About an hour later, SANDOVAL asked to speak to the agents again, and he admitted that the safe was his. Each suspect had a key to the safe on their personal key chain. SANDOVAL gave the agents written consent to search the safe, and claimed that $10,000 currency was in the safe. He said MENDEZ had the code to the safe even though it was SANDOVAL's safe. When asked if there were cocaine in the safe, SANDOVAL did not answer. Upon opening the safe, the agents found over five kilograms of cocaine.

When confronted about the cocaine found in the safe, SANDOVAL admitted that it came from Long Island and that he accompanied MENDEZ to New York for the cocaine.

The cocaine was sent to the laboratory for analysis, and determined to weigh over six kilograms. The packaging was analyzed for fingerprints, and MENDEZ's fingerprints were found on the bag containing the cocaine and on one of the cocaine wrappers.

## III. Legal Issues

### A. Fed.R.Evid. 404(b)

Pursuant to Fed.R.Evid. 404(b), the government filed a notice of intent to introduce evidence that SANDOVAL provided false identification to SA Forde at the traffic stop. The government maintains that this evidence is intrinsic to the offense charged in light of the alias used in the indictment and

the testimony the government will elicit regarding the use of aliases, code and countersurveillance in narcotics trafficking.

That being said, should the Court conclude that evidence of the defendant's alias is not intrinsic to the drug trafficking charge alleged in the indictment, the First Circuit has held that evidence of a false identification is admissible evidence demonstrating the defendant's consciousness of guilt. See United States v. Levy-Cordero, 67 F.3d 1002, 1011 (1st Cir. 1995). Evidence purporting to show consciousness of guilt is admissible pursuant to Fed.R.Evid. 404(b). United States v. Vega-Molina, 407 F.3d 511, 530 (1st Cir. 2005); United States v. Gilbert, 229 F.3d 15, 26 (1st Cir. 2000).

B. Opinion Evidence

The government will offer the testimony of law enforcement personnel, in particular SA Dan Forde and TFA TFA Karl Jacobson, who will testify, based on their extensive experience and training in the field of narcotics trafficking, to the methods and operation unique to narcotics trafficking. Specifically, agents may testify to the price of cocaine; the manner in which it is manufactured, packaged, sold and used; the equipment used in narcotics trafficking; and, tactics used by drug dealers, to transport narcotics and evade detection by law enforcement. The government will also elicit testimony about the techniques used by law enforcement in a narcotics investigation.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, 454 F.3d 13, 23-24 (1st Cir. 2006) (upholding the admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (in a narcotics case, agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983).

C. Bruton Issues

At this juncture, the government believes MENDEZ will be pleading guilty. However, should he proceed to trial, the specter of Bruton v. United States, 391 U.S. 123 (1968) is raised. The government addressed these issues in its response to MENDEZ's motion to sever filed on October 26, 2006.

## IV. Requested Voir Dire

The government will submit its proposed voir dire under separate cover.

## V. Jury Instructions

The government will submit its proposed jury instructions under separate cover prior to the commencement of trial.

## VI. Witness and Evidence List

The government will submit a witness and evidence list under separate cover prior to the commencement of trial.

VII. Estimated Time of Trial

The government estimates that it will take two days to conduct the trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

CERTIFICATION

I hereby certify that on October 30, 2006, a copy of the within "Government's Trial Memorandum" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Edward Roy
Federal Defender's Office
10 Weybosset Street - Suite 300
Providence, Rhode Island 02903

Ms. Judith Crowell
Attorney at Law
128 Dorrance Street
Providence, RI 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj