**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | |
| | ) | **Cr. No. 06-070S** |
| **OSCAR R. SANDOVAL-ESPANA a/k/a** | ) | |
| **Eddie Alberto Ramos** | ) | |
| **and** | ) | |
| **MANUEL A. MENDEZ-HERASME** | ) | |

**GOVERMENT'S RESPONSE TO DEFENDANT SANDOVAL'S MOTION FOR A DAUBERT HEARING**

The defendant contends that the Court should hold a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993) to determine the "reliability and helpfulness" of law enforcement opinion testimony the government intends to introduce. The government maintains that although the foundation that will be laid prior to eliciting such opinion testimony, namely the agent's training, experience and observations, mirrors the foundation necessary to qualify him as an expert pursuant to FRE 702, such testimony is more appropriately presented as lay opinion testimony pursuant to FRE 701. Accordingly, a Daubert hearing is unnecessary.

**FACTS**

The government intends to call Special Agent (SA) Dan Forde[1]

[1] SA Forde has been an agent with the Drug Enforcement Administration for over 8 years. He has worked on over 300 cases, at least 50 of which he served as the case agent. At least 60% of the cases he worked on involved cocaine. SA Forde

and/or Task Force Agent (TFA) Karl Jacobson[2] as fact witnesses to the drug deal occurring in this case. Specifically, these agents

has debriefed numerous defendants and informants. He has worked undercover, conducted surveillance, written federal wiretap affidavits, run the wire room, listened to numerous encoded drug conversations, written search warrant affidavits, executed search warrants, and planned and coordinated several large-scale, multi-jurisdictional enforcement operations.

Significantly, SA Forde has testified in the Eastern District of Pennsylvania, the District of Massachusetts and the District of Rhode Island to some or all of the following: the meaning of coded language, the street value of narcotics, the manner in which drugs are distributed at various levels in the supply chain, how drugs are packaged, the hierarchy of drug organizations, the utilization of cellular phones in furtherance of narcotics trafficking, the use of aliases, the utilization of cooperators in drug investigations, countersurveillance and other tactics engaged in by drug dealers to evade detection by law enforcement, the use of hidden compartments in the transportation of narcotics and what constitutes a distributable quantity of narcotics.

[2] TFA Jacobson has been a police officer for eight years, of which four of those years have been spent in narcotics. TFA Jacobson has served on the DEA task force for the last two and a half years. He has worked on at least 1,000 drug cases, of which at least half he served as a case agent. At least 60% of the cases he worked involved cocaine. TFA Jacobson has debriefed numerous defendants and informants. He also has been involved in over 6,500 motor vehicle stops, many of which involved the seizure of narcotics. He has worked undercover on numerous occasions, and purchased narcotics at least 100 times during his career. He has conducted surveillance, written federal wiretap affidavits, run the wire room, listened to numerous encoded drug conversations, written search warrant affidavits, executed search warrants, and planned and coordinated several large operations.

Significantly, TFA Jacobson has testified in the District of Rhode Island and Rhode Island state court to some or all of the following: the meaning of coded language, the street value of narcotics, the manner in which drugs are distributed at various levels in the supply chain, the use of cellular phones in furtherance of narcotics trafficking, the use of cooperators in drug investigations, and countersurveillance tactics employed by narcotics traffickers.

would testify to the traffic stop, subsequent discovery of cocaine and the defendant's confession.

In addition, the government intends to elicit the following opinion testimony[3]:

(1) the street value of cocaine;

(2) the manner in which cocaine is manufactured, packaged, sold and used;

(3) the equipment used in narcotics trafficking; and,

(4) tactics used by drug dealers to transport narcotics and evade detection by law enforcement.

## ARGUMENT

### I. AGENT OPINION TESTIMONY IS ADMISSIBLE AS LAY OPINION TESTIMONY PURSUANT TO FRE 701.

It is well-established that a law enforcement officer or an agent may give opinion testimony regarding "how drug deals work," see United States v. Maher, 454 F.3d 13, 24 (1st Cir. 2006), yet the form of that testimony has been the subject of debate since the 2000 amendments to Fed. R. Evid. 701.[4] Most recently, the

---

[3] In its pretrial memorandum the government indicated that it would seek to elicit testimony regarding the tactics used by law enforcement to investigate narcotics offense. To the extent such testimony is elicited, it is neither lay nor expert testimony.

[4] As amended in 2000 to add the third prong (prong "(c)"), Rule 701 now provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those

First Circuit recognized that often times "part of an officer's testimony will be lay opinion [pursuant to Fed. R. Evid. 701] and part will be expert opinion [pursuant to Fed. R. Evid. 702]." Id.

In United States v. Ayala-Pizarro, 407 F.3d 25, 26, 29 (1st Cir.), cert. denied, 126 S. Ct. 247 (2005), the Court held that, notwithstanding the 2000 amendments, the agent testified as a lay and not expert witness in explaining (1) "drug distribution points and how they operate," (2) "how heroin is normally packaged for distribution at these points," and (3) how places where drugs are sold "are often protected by people with weapons."

In the case of the drug distribution point testimony, the Court stressed that the agent "stated that he had investigated, patrolled, or made arrests at drug points on more than 100 occasions" and that his testimony concerning "what occurred at those drug points . . . was based on the requisite personal knowledge under Fed. R. Evid. 602 and also met the requirements

---

> opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

of Fed. R. Evid. 701 because it was based on 'particularized knowledge that the witness [had] by virtue of his . . . position' as a police officer assigned to patrol the neighborhood." Ayala-Pizarro, 407 F.3d at 28 (quoting 2000 advisory committee notes to Rule 701).

With respect to the drug packaging testimony, the Court noted that this testimony was based on what the agent had personally observed in "his experience on prior drug arrests" and that the jury's consideration of the testimony took place in the context of surrounding evidence which established that the packages seized in that case contained drugs. Id. at 29.

Addressing the third and more specific category of testimony, the Court reasoned: "It required no special expertise for [the agent] to conclude, based on his observations, that places which sell drugs are often protected by people with weapons. The defense could hardly be surprised by [the] testimony that [the defendant] was arrested at a drug point, nor was [the defense] disabled from testing the reliability of [the agent's] perceptions through cross-examination." Id.

In United States v. Pinillos-Prieto, 419 F.3d 61, 69-72 (1st Cir. 2005), the First Circuit applied Ayala-Pizarro and held that Rule 701 and not Rule 702 governed agent testimony concerning "how drug organizations typically operate," including how drugs are stored and protected, how drug deals are negotiated and

consummated, and which phase in the transactions is the most dangerous.[5]

More generally, in addressing certain agent testimony on a firearms issue, the First Circuit concluded that it "was properly regarded as lay opinion testimony because it was based on information gleaned from [the agent's] personal experience . . . and was arrived at 'from a process of reasoning familiar in everyday life.'" United States v. Colon Osorio, 360 F.3d 48, 53 (1st Cir. 2004) (quoting 2000 advisory committee notes to Rule 701).

**A. Testimony pertaining to the street value of cocaine.**

In United States v. Rivera, 68 F.3d 5, 8 (1st Cir. 1995), the Court held, "DEA agents are especially qualified, and need not be certified as experts, to testify about street value [of drugs]." Although this case came down prior to the 2000 amendments, the rationale of the Court would still apply because such testimony is based upon "information gleaned from [the agent's] personal experiences" as an undercover officer, and as an agent who has supervised a cooperator during controlled and reverse buys. See Colon Osorio, 360 F.3d at 53.

Alternatively, even if it were necessary to qualify the

---

[5] But see United States v. Garcia-Morales, 382 F.3d 12, 18-19 (1st Cir. 2004) (characterizing similar testimony as expert testimony).

agents and have them declared experts to the jury, it is clear that the training, experience and observations, see Footnotes 1 and 2, of SA Forde and TFA Jacobson would satisfy the requirements of Fed. R. Evid. 702 as well as Fed. R. Evid. 701. See United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (the failure to determine whether an agent's testimony to coded drug terms was expert or lay was irrelevant since the agent was clearly qualified based upon his experience, and the government provided notice ahead of time).

**B. Testimony about the manner in which cocaine is manufactured, packaged, sold and used.**

In Maher, 454 F.3d at 23-24 and Ayala-Pizarro, 407 F.3d at 29, the agent testified pursuant to Fed. R. Evid. 701 to the typical packaging of narcotics. Likewise, in Pinillos-Prieto, 419 F.3d at 71-72, the agent testified pursuant to Fed. R. Evid. 701 to the meaning of code words, and the most dangerous point during the drug sale. He also testified to some of the methods used by the government during a drug buy, and why "innocent bystanders" are not present during a drug sale. Id. Based upon this recent First Circuit case law, the testimony the government seeks to elicit from the agents is admissible pursuant to Fed. R. Evid. 701.

Alternatively, even if it were necessary to qualify the agents and have them declared experts to the jury, it is clear

that the training, experience and observations, see Footnotes 1 and 2, of SA Forde and TFA Jacobson would satisfy the requirements of Fed. R. Evid. 702 as well as Fed. R. Evid. 701. See United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (agent testified as an expert to drug quantities consistent with distribution); Villarman-Oviedo, 325 F.3d at 13 (the failure to determine whether an agent's testimony was expert or lay was irrelevant since the agent was clearly qualified based upon his experience, and the government provided notice ahead of time).

**C. Testimony about the equipment used in narcotics trafficking, and the tactics used by drug dealers to transport narcotics and evade detection by law enforcement.**

As already discussed, under Ayala-Pizarro, 407 F.3d at 29, Pinillos-Prieto, 419 F.3d at 71-72, and Maher, 454 F.3d at 23-24, testimony regarding how drug organizations operate is admissible lay opinion testimony. Alternatively, testimony regarding the equipment and tactics utilized by narcotics traffickers is admissible expert testimony. See Villarman-Oviedo, 325 F.3d at 13 (regarding the use of code); United States v. Isler, 429 F.3d 19, 26-27 (1st Cir. 2005) (agent allowed to testify to the barricades and surveillance features at defendant's stash house, and how such countersurveillance equipment compared to other stash house the officer had raided); United States v. Lopez-Lopez, 282 F.3d 1, 14-15 (1st Cir. 2002) (allowing an agent to

testify as an expert to the use of GPS and cellular phones in narcotics trafficking).

**CONCLUSION**

In accordance with recent First Circuit cases, the Court should determine that the testimony the government seeks to elicit from the agents is lay opinion testimony admissible pursuant to Fed. R. Evid. 701, and not subject to the same scrutiny or disclosure as expert opinion testimony offered under Fed. R. Evid. 702. In the alternative, the Court should conclude that the testimony the government may introduce through SA Forde and/or TFA Jacobson is proper expert testimony based upon the agents' experience.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

CERTIFICATION

I hereby certify that on November 2, 2006, a copy of the within "Government's Response to Defendant Sandoval's Motion for a Daubert Hearing" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Edward Roy
Federal Defender's Office
10 Weybosset Street - Suite 300
Providence, Rhode Island 02903

Ms. Judith Crowell
Attorney at Law
128 Dorrance Street
Providence, RI 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj